The next matter, number 25-1254 Abdul Qadir Abdisalam v. Strategic Delivery Solutions, LLC At this time, will Counselor C. Appellate please come to the podium and introduce himself on the record to begin Good morning. May it please the Court, James Eckhardt for the Defendant Appellant SDS. I'd like to reserve three minutes for rebuttal if I may. We raise several issues in our briefs, but with the Court's permission, I'd like to focus on why Mr. Abdisalam should be bound by the arbitration provision either as a successor in interest to his company or under the principles of equitable estoppel. First, Mr. Abdisalam is a successor in interest to his company. After Abdul Qadir LLC was dissolved in December of 2023, Mr. Abdisalam's operations under the vendor agreement remained unchanged. For that reason, he does not defend the District Court's decision that he was not the mere continuation of his business. It is undisputed at this point that he was. This Court should therefore reverse with instructions to the District Court to compel arbitration. Second, Mr. Abdisalam is subject to arbitration under direct benefits estoppel. For years, he received tangible direct benefits under the vendor agreement. After his company was dissolved in December of 2023, he was the only person who could have benefited under the vendor agreement. He is estopped from disavowing the arbitration provision now after years of receiving direct benefits. Finally, Mr. Abdisalam is subject to arbitration because his claims are intertwined with the vendor agreement. In the Charter v. System 4, the Massachusetts Supreme Judicial Court analyzed similar claims by franchisees alleging misclassification under the Wage Act. How is it intertwined? Because as I gleaned, I know it wasn't entirely clear, but as I read his complaint on the merits here, he's saying, I did a bunch of work for your client and I haven't been paid properly. And you don't need to look at any contract with any LLC or anything to know that. In fact, if you look at the contract, it doesn't really provide the payment terms and stuff. And it was all a facade, a sham at the instruction of your counsel, of your client, as evidenced by the fact that when out of business, nobody even noticed. So he's saying it's him that worked for you and you didn't pay him the statutory wage. Yes, Your Honor. So just to be clear, there's a dispute, merits dispute, between the parties about whether the contract is a sham and whether he was misclassified as an independent contractor or should have been an employee. And that's the dispute that we think belongs in arbitration. But Your Honor's point about how his claims are intertwined, that's the exact issue the Massachusetts Supreme Judicial Court addressed in Machado. So there, the franchisees plaintiffs had franchise agreements with another corporation and the claim in Machado was that those individuals were misclassified as independent contractors and should have been employees under the Wage Act. And they brought claims under the Wage Act. And the Machado court held that the claims of those plaintiffs alleging misclassification and the substantive claims under the Wage Act were intertwined with the franchise agreements. And so we think Machado's analysis maps directly to this. The individuals were the contractors in that case, if I recall correctly. So there were five plaintiffs, and this is in footnote three of Machado, there were five plaintiffs in that case. Three of them were signatories to the franchise agreements. Two of the plaintiffs were non-signatories. They were employees of the three other signatory plaintiffs. But the franchise agreement remained in place the whole time. It did. I don't know. I guess here is the plaintiff seeking compensation only for work done post-dissolution of the LLC or for work both pre and post? I believe it's pre and post, Your Honor. Do you see any distinction between the legal analysis that might apply to the pre-dissolution period versus the post-dissolution period? If there is a distinction, that's an issue for the arbitrator to decide under the… Well, that kind of begs the question of whether if there's a difference that might bear on whether he's subject for the post-dissolution period to the arbitration agreement at all. Well, I… Because it just seems to me… Imagine he only is seeking it for the post-period, and I know you're saying that's not the case. But with respect to the post-period, I don't see how the direct benefits case that you cite has anything to do with that because there's no contract with anybody during that post-period. The only contract is with the LLC, which is dissolved. I understand how maybe the successor and interest argument would still work, but just on the direct benefits. I guess I'm not tracking that. Yes, Your Honor. So I think the successor and interest document would take care of that issue, Your Honor. Do you agree with me that it wouldn't take care of the – wouldn't – the direct benefits wouldn't work for the post-dissolution period? I'm not sure I would agree with that, Your Honor. But I do – I want to make the point, though, that if the Court agrees that some claims are arbitrable, even only – and only addresses the pre-dissolution claims, at that point there is a delegation provision in the vendor agreement. And so the scope of the arbitration provision and whether or not it covers all claims or only pre-dissolution claims should be decided by the arbitrator in the first instance. Maybe Mr. Abdi-Salam can argue to the arbitrator that only the pre-dissolution claims are subject to arbitration, but that is a decision that the arbitrator should make under the delegation provision. To go back to the successor and interest point real quick. Is there anything in the delegation – do we have anybody – no one's construed the delegation clause with respect to whether it, on its terms, means to be addressing post-dissolution – you know, unrelated – arguably unrelated claims. Sometimes – I mean, no one's really even gotten into that question in this case, right? I agree, but the plaintiff never addressed the delegation provision directly. I understand why. I see that point. Suppose we had here the LLC agreement, just as it is, and then we had a separate agreement that he signed, in which he signed as an employee saying he'd do all this work, and he did it. And then he wanted to bring a claim under that contract. I take it there'd be no contention that he would be subject to any arbitration clause if that contract did not contain one. I think that'd be a harder case. It's hard for me to say definitively that there'd be no argument for arbitration there. I understand. So we won't bind you to that. But isn't he saying that's what we have here, only my contract with the employer is not written? It's a course of conduct over time. But one thing it certainly doesn't have is an arbitration clause. I don't think that's the situation here. He's the owner of his LLC. So that's a huge difference between – Well, if the LLC had brought a claim, it'd be subject to arbitration because it was a party to a contract. But if he wasn't a party to that contract and was simply operating directly vis-à-vis the company because the LLC was a sham or the like. I disagree with that, Your Honor. And I point the Court to the Everett case from the Seventh Circuit that we cite in our reply brief, along with several other cases on page 15 of our reply, in which, at least with respect to the doctrine of direct benefits estoppel, courts have concluded that sole owners or partial owners of LLCs are direct beneficiaries of their businesses' agreements and are therefore subject to arbitrate under those rules. The logic of that is the same as what's the subcontractor case you cite with the energy company for the direct benefits? Don't you have a Massachusetts case in your briefing? Am I misremembering? It's not coming to me right now, Your Honor. But we are looking at Massachusetts law. And is there – when I read the cases, I didn't see any Massachusetts case that applies the direct benefits theory really in a context other than when someone's seeking to enforce the agreement that has the arbitration clause in it. So is there any such case? For the direct benefits estoppel? Yeah. So it is a recognized doctrine under Massachusetts law. No, I understand. But the doctrine that's been recognized has been applied only in situations where the person has been seeking to enforce the agreement that has the arbitration clause in it. And that's not what the plaintiff is doing here. So I'm asking you, is there any Massachusetts law case that applies direct benefits estoppel in a different factual context? So I think the – so I think the way that the cases describe the doctrine is a two-part test, and it's destructive. I understand the test. I'm just asking you, is there a case where the factual context is something other than the person is seeking to enforce the agreement that has the arbitration clause in it? And that's why the court concludes that direct benefits estoppel applies. Yeah, a Massachusetts case, because that's the law. You agree that's the law we're applying, right? We're not applying Seventh Circuit. Yes, Your Honor, but yes, I don't have a case for you right now. The Massachusetts courts have looked to Federal law in this area, so we do think that the Seventh Circuit case that we cite and the other cases we cite are persuasive authority under Massachusetts law. They haven't actually, again, since they haven't applied it in that context, we would be expanding Massachusetts law to accept your theory, wouldn't we? You would not be. And so under direct benefits estoppel, there are two ways that the courts recognize a non-signatory can be bound to an arbitration agreement. One way is if they are bringing claims under the contract. That's very obvious that in that situation they would be bound under direct benefits estoppel. But the other way is if the non-signatory received direct benefits flown from the contract during the contract's life. And that is the... What's an example of a case that says that? So I point the court back to the other case from the Seventh Circuit. You don't have a Massachusetts case of that kind? Not where the court has relied on that part of the test, but the cases do when they... Do you know what the general rule is? If I hire a general contractor and I have an agreement with the general contractor for him to build me something and I include an arbitration agreement in our contract, when they hire the subcontractor, is the subcontractor free from the arbitration agreement or does direct benefits apply in that context? So I think it would depend on the facts, Your Honor. It's hard for me to say right now, but there could be a potential argument that the subcontractor, again depending on the particular facts, was a direct, received direct benefits under the contract between the general contractor and the customer. I thought direct benefits was where A contracts with B requiring B to pay C, and therefore C is a recipient of direct benefits under the contract between A and B. But where A contracts with B that B will pay A, and then C has some ownership interest in A, that would make every stockholder or majority stockholder a direct beneficiary of contracts, which I understand is not the case. So that's certainly not our position on your first example, Judge Gallardo. I think that would be third-party beneficiary analysis. So in that context, you are looking at the language of the contract and whether the intent of the parties was to confer a contractual benefit under the agreement to a third party, but that's not the analysis under direct benefits of stockholders. The focus is more backward-looking and whether or not during the life of the contract, the non-signatory or non-party received direct benefits flowing from the contract. What about the word direct? Because every, I mean, every employee of, I buy a phone from Apple. Every employee of Apple benefited in some infinitesimal way from that purchase. Yeah, and I cannot emphasize enough that he is the owner of his LLC. He personally performed under the vendor agreement. All of the benefits under the vendor agreement directly benefited himself as the owner of the LLC. That's exactly what the Seventh Circuit says in the Everett case. In the other cases, Mr. May, I was asking you about the subcontractor case, but you seem to hesitate about that. So that would be a more difficult situation because there wouldn't be an ownership interest with the subcontractor under a general contractor who has the arbitration agreement with the customer. So that would be more difficult. And you say he's a direct beneficiary. You mean just as the owner? Yes. The Seventh Circuit clearly says that the ownership interest in the LLC, and that was a franchise agreement situation as well where there was a husband and wife, that the husband signed the franchise agreement with the defendant. The wife was not a signatory, but she did have a 50 percent ownership interest in the LLC. The Seventh Circuit said the ownership interest itself was a direct benefit under the agreement sufficient to bind the wife to the arbitration provision. Here, there's – I mean – I guess it's a question for what, though? For the wage act claims? Because then that just raises the question I think Judge Carter was asking you, that the wage act claims are predicated on his contention that I, in effect, had a separate course of conduct contract with these people. Nothing about my ownership interest in the LLC made me a direct beneficiary in getting paid for that separate course of contract conduct. So I think the – that goes to the question of scope and whether the claims that Mr. Abdi Salaam has brought falls within the scope of the – It does. I think it goes to the question of whether the direct benefits estoppel apply. I disagree with that, Your Honor. I understand there are cases in which courts have applied direct benefits estoppel because the plaintiff is bringing claims under the contract. But the way that the Massachusetts courts and other courts have framed the second version of direct benefits estoppel is – I don't ever cite a mass court that does that. You keep saying mass courts do it, and then you say my example is a Seventh Circuit case. Well, because in most cases the parties seeking to compel arbitration did not demonstrate that the plaintiff had directly benefited under the contract, and we have done that here. None of those cases involve a situation like this one in which it's an owner of the LLC who has sued and is seeking to avoid arbitration despite the fact that he benefited for years operating under the agreement. None – all of those cases are distinguishable for that reason alone. And I point this court back to its decision in Entergen, which I understand in that case the court rejected the direct benefits estoppel theory. But the reason the court rejected the theory in that case is because the parties seeking to compel arbitration failed to do what we did here and demonstrate that the non-signatory had directly benefited from the contract during its currency. Can you say a little bit about the successor of interest before you – Yes, Your Honor. – how we think about that? I take it it's not the case that every time a company dissolves and a new company is created by the person who once owned the old company, they're a successor in interest to the old company. Correct. But why is this person a successor in interest to the old company? It's because, and there's no dispute on this fact, that Mr. Abdi Salam continued operating under the vendor agreement without any changes. Like, he was the mere continuation of the LLC after it was dissolved in December of 2023. The district court – Is it your position that he could enforce – I know only through arbitration – but that he could enforce that vendor agreement with you? You wouldn't take the position that if he tried to enforce it, you'd say you're not a party to it? Well, certainly if he sought to compel us to arbitration, I think, you know, it's good for the goose, it's good for the gander, so we would be subject to arbitration as well. Aren't all the successor in interest cases either about – they're trying to avoid corporations taking on new forms to get out of obligations that they've committed to or they involve an assignment of rights, and we don't have either of those things. So, again, is there any case that actually holds what you want under Massachusetts law? The New Balance case from this court decided two years ago, and so in that case there was no showing of – the court applied the successor in interest doctrine to a predecessor and successor relationship. The court in its analysis did not point to a pretext or intent to avoid deaths in the section of its opinion addressing the successor in interest. Instead, the focus was on whether or not the facts demonstrated that the successor operated as a mere continuation of the predecessor, and that's exactly the case here. There is no dispute either below or before this court from Mr. Abdi Salam that that's what happened in this case. And so I recognize in the Smith v. Kelly case, for example, it was a situation that you described where there was evidence that the successor was trying to avoid liabilities of the predecessor, and there is some discussion by the Massachusetts Supreme Judicial Court there that says, well, when it's a situation that you're going from a former business entity to a sole proprietorship, courts may need to be more careful before holding the successor liable for the debts of the predecessor, but that's not what we're trying to do here. We're just trying to compel this dispute to arbitration, which is what the situation in this court addressed in New Balance. And so the concern about, well, is Mr. Abdi Salam going to be saddled with the debts of his LLC, that's just not present in this case. And if we attempted to assert a claim against him in arbitration, then it would be at that point that he could raise that kind of argument before the arbitrator. Now, as I understand the different perspective offered by the other party on this case, your client went to great efforts contractually to make sure that the individual here was a stranger contractually to your client, erecting a wall between them in the form of the LLC. And yet now your client wants us to deem him, forget about the LLC, merge the two right together and treat them as if they were buddies from the beginning. I don't think we are trying to merge them. So we recognize that Abdul Kurir LLC is a party to the vendor agreement. We also assert, and we haven't really discussed this portion of our briefing because I focused on alternative arguments that Mr. Abdi Salam is personally a party to the vendor agreement as well. There's nothing strange about that in the district court briefing. He was a signatory to it? Mr. Abdi Salam signed the vendor agreement. As owner of Abdul. Yes, that's one argument we offer in our papers, but I think the easier way to resolve this case is on the alternative theories we offer about why he should be bound as a non-party. Don't all of those theories really just boil down to assuming that they're the same entity? I mean, that's essentially, and these are all equitable theories. And again, your client was very clear he didn't want to contract with this person directly. It required him to create a corporation and then only contracted with the corporation, and that's who they have an arbitration clause with. But now you're basically telling us, let's forget all about that, and he's bound by the arbitration clause. So that is the allegation. We haven't done discovery to test that allegation yet, but I think on the successor. Well, part of that is an allegation. Do you dispute that you required him to incorporate in order to enter into a vendor agreement? So I don't think the record is developed on that, but I do think there's a difference between requiring somebody to do something and just saying to the world we're only interested in contracting with certain categories of individuals or entities. If there had been no arbitration agreement during the period the LLC was in place, I take it you would have rejected any attempt by him in his personal capacity to enforce the agreement vis-à-vis him. Correct? The vendor agreement or the arbitration provision, I guess it would depend on what that kind of claim looked like. It was that you weren't paying me under the contract. Well, then, if he's – Drawing his own name, we say, are you bringing it on behalf of the LLC? No, I'm bringing it in my own personal capacity because I think they owe me under the contract. What would your position have been? It's hard to say, Your Honor. It's kind of hard. Well, if he's a party to the vendor agreement, then he – He's not. If the court disagrees that he's not a party to the vendor agreement, then he would need to demonstrate some basis to bring a claim under the contract as a non-party. Do you think he would have had one? I can't say one way or the other with it. Do you think he's shown enough to show he would have one? Potentially, but I think it would depend on the kinds of claims and the specific facts. Here, I'll go back to the Machado case. I think that's directly on point. I understand Hogan, the decision in Hogan from this court, and the TF Final Mile case. There is some – there are some differences between how the court approached those cases and how the Massachusetts Supreme Judicial Court approached Estoppel in Machado. Here, we're arguing that Massachusetts laws controls the question, and under Machado, we believe the claims are intertwined with the vendor agreement itself. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record? Good morning, Your Honors. May it please the Court. My name is Brian Cassavant. I represent the plaintiff appellee, Abdul Abdeslam. Unless Your Honors have specific questions that you would like addressed at the top, I will devote my time to responding to the arguments that SDS has raised here concerning equitable Estoppel and successor in interest theory. First, talking about direct benefits of Estoppel, it's in the name. It's a direct benefit from one party to another. Massachusetts courts, the SJC in Machado, this court, has repeatedly intoned that the – that a direct benefit is a benefit that flows, to keep using the word, directly through a contract from one party to another, not indirectly between parties and intermediaries. In my subcontractor case, the subcontractor would not be bound by the arbitration agreement? Correct. If I – Is that clear under MAS laws? It is. I think if you read Machado, and I think if you read this court's own precedence, applying equitable Estoppel and direct benefits of Estoppel, you will see that really what SDS is trying to do here, and I think Your Honor's questions to my brother counsel illuminated this, is they're trying to take direct benefits of Estoppel and the case law applying that and kind of apply it in the inverse way. To use your example of a subcontractor, if I hire a plumbing company to come to my house and fix a sink, and they send a plumber, and the agreement that I have with the plumbing company has an arbitration agreement, you cannot say based on that scenario that there is a meeting of the minds or an understanding between me and the plumbing company that I have any kind of a direct benefit relationship with the actual individual plumber who they send to my house. That person who's going to get paid presumably wages for the plumbing work that he does is going to get paid those wages from his employer, the plumbing company. Sure, the plumbing company generates revenue from charging me, but that's at best an indirect flow of benefits. What about going the other direction? If the plumber had a claim, and you had agreed with the plumbing company to contract them, and you had agreed to arbitrate your disputes with them, the plumber who's then getting paid by that company is free of the arbitration agreement? In this type of scenario, yes. I would have, in that scenario, and in the facts of this case, that plumber would be free to sue me individually irrespective of any agreement that I had with this plumbing company, unless, of course, the contract I had with the plumbing company had some sort of peculiar language in it that might somehow loop that individual employee in, but any such language in this case is totally missing. If you look at the language of this contract, the contract that SDS is seeking to enforce here, there's nothing in the agreement that you could derive any sort of... On your view, just so I understand it, what is the direct benefits estoppel theory doing that, say, third-party beneficiary analysis is not doing? I'm afraid I don't quite understand Your Honor's question there. It's a separate direct benefits estoppel theory? Yes. What kind of cases is it designed for? It protects the party asserting it in a way that third-party beneficiary notions wouldn't themselves protect them. Thank you for clarifying, Your Honor. So what direct benefits estoppel is trying to do is, as my brother forecasts, essentially cover two things. One, the most obvious case is you have someone who is both trying to embrace certain benefits under the contract but then repudiate other elements they find distasteful or they don't want to deal with. That's not this case at all. We're not seeking any benefit under the contract. The other scenario is that, and this is articulated in Machado, is that direct benefits estoppel is trying to stop signatories to an agreement from avoiding arbitration with non-signatories. So the opposite of this situation. So here we have two signatory or two parties to the contract. We have SDS and we have the vendor, which is a dual carrier LLC. Mr. Abdisalan is not personally a party to that contract. He's a signatory only in the sense that he's the owner of the vendor. What SDS is attempting to do is trying to take the lesson of Machado and its application of direct benefits estoppel and flip that around and say that even though Mr. Abdisalan is not a signatory So it's a precondition of the doctrine that you must be a signatory? That is under Machado. That's your understanding. That is my understanding of Machado and this Court's own precedent. Do you agree that the Seventh Circuit understands it differently? I do. In fact, I thank you for bringing up the Seventh Circuit decision in Everlink. And there's another decision, which I'm not sure is the Seventh, it might be a different circuit, called Franlink. These are the two decisions that SDS relies on for this argument in its brief. Those cases are meaningfully, and I say significantly, distinguishable because they arise in the franchise context. And this is highly relevant because to obtain a franchise, to become a franchisee, you have to establish that you are going to work with a master franchisor exclusively. The master franchisor, say Dunkin' Donuts, for instance, I can only open a Dunkin' Donuts franchise if I personally make all sorts of agreements with the Dunkin' Donuts parent corporation to do that. So that is a direct benefit to me personally. Dunkin' Donuts would never have allowed me. You're a non-signatory. We're saying that I... In that instance, you're a non-signatory. Yes, in that instance, I'm a non... You're not disputing Massachusetts law would come out the same way in the franchise context? I think that Massachusetts court could in a franchise context where the direct... where the benefits are axiomatically direct because you can only have a franchise relationship if the direct benefit of the franchise relationship itself... the franchise relationship itself is the direct exclusive benefit. But that's not this case because here under this agreement that SDS foisted upon Mr. Abdisalam, vendor... a dual carrier LLC is free to work for any company that it wants. The agreement states that he can service other customers, he can take other clients, and so on and so forth. They can hire... A dual carrier could hire anyone he wanted to do the work. That is not a direct benefit. That is an indirect benefit. What makes the Seventh Circuit Everett case distinguishable is that a franchise agreement has to be a direct benefit. It's the only way a franchise structure will work. The fact of the conferral of franchise status is the direct benefit. But here SDS is not conferring any direct benefit on a dual carrier. In the franchisee case, just so I understand the facts of it, there's a franchisee, there's a franchisor. And then is it that the franchisee is bound by the agreement the franchisor struck with a third party to arbitrate? This actually gets... This is a meaningful distinction with regards to several of the cases, and perhaps even all the cases SDS cites. And it kind of goes to the delegation issue and the understanding of whether there is an agreement between the parties. Forgetting all that, in those cases, is it franchisee has agreement with franchisor, franchisor has an agreement with a third party that creates an arbitration agreement? I don't believe that is the circumstance. My read of Everett and FranLink was that essentially what you had is a franchisor and a franchisee, and then you had individuals who had executed an agreement with the franchisor in order to form the franchisee. And that was the benefit that they got out of it, is that by dint of the agreement, they were allowed to form a franchise. But the agreement that contained the arbitration agreement was between the individual and the franchisor, right? That I can't say on the record in Everett and FranLink. That may have been the case, but I just can't remember. I apologize, Your Honor. Turning to, with my remaining time, I wanted to talk about the intertwined... I just want to ask one other question on the direct benefits to see if you think this makes a difference. I think the argument that they have made in terms of the direct benefit that they think exists is that when your client was continuing to do delivery services even after the corporation was dissolved, that he was getting the benefit of their federal motor carrier authority and certain insurance benefits, and I think a few other benefits that really wouldn't have existed but for the relationship. Can you just respond to how you think about those very particular factual arguments that they're making? Yes. So the fact that the vendor, a dual carrier, was administratively dissolved, and on this record we don't know why it was dissolved, under the terms of SDS's own contract with the vendor, that may very well have ended the written contractual relationship between Abdul Courier and SDS, leaving Mr. Abdislam free to have a non-written but sort of pseudo-contractual employment relationship or independent contract relationship with SDS. The benefits that then SDS conferred on him, permission to use their motor carrier number and so on and so forth, that's all fine. Maybe those are direct benefits, but there's no agreement anymore because the agreement by its own terms, if you look at the termination provisions in the agreement, if you look at the termination provisions in the agreement, you look at the integration clause, you look at the assignment provision, arguably when the vendor dissolved, there was no more relationship between the vendor and SDS. That relationship ceased, and then there became a non-written... You're saying it may be direct benefits, but it's of a different agreement. Yes, correct. Are you bringing only claims for post-dissolution compensation? No. How does what you just... I understand what you just said how it tracks for the post-dilution part, but what about the pre-dilution part? Because with the existence of it, if you go back to the contract being this legally cognizable document and the vendor being a legally cognizable entity, at that point we can't just pretend that the vendor doesn't exist anymore. It's a real legal entity, and the direct benefits, to the extent there were any from SDS, flow to it, and then from it indirectly to Mr. Abdisalaam. With the dissolution, you take out the vendor, and sure, at that point maybe the benefits become direct from SDS to Mr. Abdisalaam, but there's no more arbitration agreement. There's no more written contract. So we can't ignore the legal significance of the fact that there was an intermediary corporate legally cognizable entity, the vendor, and that's really what SDS is attempting to do in this case, and Your Honors pointed to this... This is what I understand. You're doing that pre-dissolution period. Mm-hmm. What claim does he have? He has an individual claim against him. For what? For failure to reimburse him for necessary transportation expenses. Under what agreement? No agreement. It's a statutory obligation under the Wage Act and the Mass Regulations. The Massachusetts Regulation... And the idea was he was doing the work, the LLC wasn't? Yeah, that he was doing the work as an employee of the LLC, and he was not getting reimbursed for necessary business expenses. Massachusetts contemplates joint employment relationships, so it could be that he was jointly employed by Abdul Courier and by SDS, and since he was... That's the theory you're going on. That is the theory that we're going on. He was effectively an employee of the... Of both of them. And that they both have joint and several obligations to pay wages. During that period of time, it's still the case that, in your theory, then even though he's a joint employee, that doesn't change the direct benefits analysis? It does not change the direct benefits analysis, no. So I want to understand the limits, if any, of your theory. We have... And let me take it outside the real estate home improvement context, because we've got special laws there. Because I understand that you're saying that if there is a legally cognizable entity, such as an LLC or a corporation, that contracts with someone to provide services, and then hires employees who perform those contractual duties for the LLC in providing services to that someone, you seem to be saying that in every situation, those employees could sue the someone for wages, which surprises me. And that would surprise me, too, because that is not our position. There is a limitation on this, and that limitation is embodied in the case law cited by SDS. I'm hesitant to go looking for the name of the case. I don't remember right now. I have two minutes. But in essence, the limitation on that situation is if the employee in this scenario has a direct employment agreement with the employer that contains an arbitration provision, and let's say that arbitration provision is broad enough to cover any claims that arise in the scope of the employment relationship, and then that employee sues a non-signatory, non-party customer of his employer, so one of his employer's customers, the case law in that regard has said that the non-signatory, non-party customer can then compel that employee to arbitration under the valid and binding acknowledged agreement that the employee has with his own employer. But there is no such agreement here in this case. So there has to be some agreement to be basing this on. But once I forget about arbitration for a minute, I'm just talking about bringing a suit for wages. And LLCs or a corporation's employees can sue the corporation's customer for wages. Yes, they will not succeed. They will not be able to establish, you know, as a matter of statutory law, that they satisfy the test to be considered an employee. You know, there are Rule 11 sort of legal obligations where lawyers can't just bring sort of frivolous employment status claims. But it sounds like you're saying normally they couldn't. Why could your client bring a claim here without piggybacking onto the vendor agreement? Because his status as an employee of SDS arises under the Massachusetts Independent Contractor Statute, which establishes a test to determine whether someone is an employee. If he sues SDS directly, bypassing the vendor entirely, and SDS fails to establish that it can show that he was a true independent contractor under the IC statute, then he has an employment relationship with them. I don't understand the other side's argument is hinging on establishing that your client is an independent contractor. Well, then perhaps I'm just not quite understanding your honors question. I mean that... I'm just having a little trouble understanding how your argument isn't that in all situations an employee of an LLC could sue directly the LLC's customers for work done as an employee of the LLC without piggybacking on the contract between the LLC and the customer. And I believe that within the regulatory framework of the Wage Act, wage laws, employment status, Massachusetts law and Massachusetts courts have recognized a legitimate business-to-business exception where if the parties can show a legitimate business-to-business relationship, it sort of eliminates the ability to even allege that there was an employment relationship between the employee and the customer. What case law do you point to on that? The legitimate business-to-business exception was most recently addressed with by the Massachusetts Appeals Court in Weiss v. Loomis Sales & Company where they're a subcontractor IT employee who had been hired by... And are you taking the view that that legitimate business-to-business exception does apply or doesn't apply? Well, our argument does not apply here because... Right, so then doesn't that just go back to... Well, I mean, I guess in that sense... ...sterilely relying on the agreement between the LLC and the vendor? No, because in the absence of a legitimate business-to-business relationship, the standard for determining whether there's a sufficient relationship between two parties such that an employee could sue a customer of his employer. As an employee of that customer, you look to the statutory test, which does not require there to be a contract. A contract is an element of that, but it's not a necessary element. It's a conjunctive three-part test. Any one of those elements that that SDS fails to satisfy means that he's an employee. So there are in-bake limitations. It's just that they're not present here. Unless Your Honors have any other questions, I will rest on our briefs. Thank you, Your Honors. Thank you. At this time, would counsel for the appellant please reintroduce himself on the record? He has a three-minute rebuttal. Thank you. James Eckert for SDS. A few points, and I'm happy to address whatever the court wants to address, but I want to make clear that we are relying on two distinct ECCPL theories. One is the direct benefits of Staple theory. The other is intertwined claims of Staple. And on intertwined claims of Staple, I want to reiterate we believe Machado is directly on point. That was a misclassification case as well, claims brought under the Wage Act. The reasoning in Machado does not appear to rely on anything unique to the franchising context. The court's analysis there. Can I understand just what was the scenario? Machado, so it's franchisor has agreement with franchisee. The arbitration agreement is located in a contract between whom and whom? In Machado, there were five plaintiffs. Only three of the plaintiffs were signatories to a franchise agreement. I didn't ask that question. There's a franchise agreement, there's a franchise, there's a franchisor, there's a franchisee. The arbitration agreement is trying to be enforced by whom? The franchisor? In Machado, it was a non-signatory franchisor or an entity related to the franchisor. I can't recall. And the arbitration agreement is in the contract between whom and whom in Machado? In that case, there were five plaintiffs, so three of the plaintiffs, it was in their franchise agreement that there were two non-signatory plaintiffs who were also subject to arbitration under the franchise agreements between those. But the arbitration agreement was between a franchisor and some franchisees, is that right? Correct. Are there any cases in the franchise context or elsewhere where there's a franchisor-franchisee agreement between franchisor and someone else that has an arbitration agreement that has been held to be enforceable against the franchisee? So a situation, I want to make sure I answer your question. Franchisor and franchisee, they have this special contract. Franchisor then has an agreement with some third party that contains an arbitration agreement. Are there any cases in which that arbitration agreement has been held to be enforceable against the franchisee? Oh, I see. I don't know if there is a case on that or not. I would say I'd point the court back to... That seems to be we've got sort of lower level person than the entity. Entity entered into agreement with the LLC. Now you're trying to enforce the arbitration agreement between those two parties against the third party. We're just trying to see is there a case like that anywhere? Is the only one you have is the Seventh Circuit case? I may have misunderstood your question. So I think I go back to Machado. And this is in footnote three. There were two non-signatory plaintiffs in Machado. And I think that would map onto Your Honor's hypothetical. Who were they? There's not much of a discussion. In the case about those two plaintiffs, it's in footnote three. But in the court's reasoning, it refers to the plaintiffs as a group and holding that intertwined claims estoppel applied. I'm out of time. I had other points. If you want to make one last point, you can.  I would say just to take a step back, and I think this came out in some of the court's questioning with my friend on the other side, plaintiff is trying to take inconsistent positions here. I think once we get past the arbitration issue, you know, right now the LLC is being used as a shield to avoid arbitration. Eventually, and it already came out in some of the questioning, the vendor agreement's going to be used, just as the court described in Machado, as evidence of SDS's alleged control sharing and employment relationship. The claims that plaintiff alleges here are not limited to just reimbursement claims. There is a claim for unlawful deductions from compensation. The only compensation that's been paid was compensation under the vendor agreement itself. These claims are tied directly to the vendor agreement, and for that reason, among others, we ask this Court to reverse with instructions to compel arbitration. But the flip side of that, too, is if you convince us that the plaintiff is a successor in interest of the LLC, then you're going to be hard-pressed in the arbitration to say that they don't stand in the shoes of the LLC for bringing claims. That may be the case, Your Honor, but we would still be able to defend against the claim that he was misclassified as an independent contractor that the substantive claims under the Wage Act as well. Just so I get the significance of the last point you just made right before that one, are you saying that that colloquy about the joint employer theory is effectively acknowledging that they're intertwined claims? I think it supports that theory for sure, and it's kind of difficult to take that theory on its face because we would have a right under the vendor agreement against optimal career LLC for indemnification or anything else, but those claims would have to be brought in arbitration. And so I don't know why we would need to affirmatively assert those claims and then move to compel arbitration instead of just sending this dispute to arbitration in the first place where it belongs. Thank you. Thank you, counsel. That concludes argument in this case.